Tilden vs. Succession of Morrison.

No. 1008.

CHARLES TILDEN, PRESIDENT OF BANK OF LOUISVILLE, vs. SUCCESSION OF C. H. MORRISON.

33 1067
52 353

A mortgage, which has not been recorded, ceases to have any effect after ten years, *even between the parties to the contract.* C. C., 3369.

APPEAL from the Fifth Judicial District Court, parish of Ouachita. *Richardson*, J.

*Richardson & McEnery* for Plaintiff and Appellant:

First—When a creditor holds but one claim against the debtor, and the debtor writes to him about the "debt you hold against me," the promises made will be held to have been made in reference to the claim held by the creditor, without the debtor's specially describing the claim.

Second—Prescription is interrupted whenever the debtor acknowledges the adverse right against which it is running. When the debtor in his letters to the creditor designates a time when he will be able to pay, or hopes to pay, or makes excuses for not paying, and asks indulgences which are inconsistent with an absence of liability, prescription will be interrupted.

Third—The omission to re-inscribe a mortgage only affects its rank, and does not destroy the mortgage itself.

Fourth—A mortgage not re-inscribed at the death of the mortgagor will take its rank according to that which it had at the death of the mortgagor. His death does not destroy the mortgage.

The opinion of the Court was delivered by

TODD, J. This is a suit on a promissory note executed by the deceased and secured by mortgage on lands described in the petition. The note is dated June 1st, 1867, and payable February 5th, 1868. The suit was instituted on the 14th March, 1879. The defences urged in the answer, are the prescription of the note and peremption of the mortgage.

On the note is indorsed an acknowledgment, signed by the deceased, in the following words:

"I hereby acknowledge the within note to be due by me this 27th January, 1873."

This acknowledgment was followed by others made in letters. The last of these letters, bearing date July 13, 1876, less than five years prior to the institution of the suit, contains the following language :

"I hope this winter to be able to make or propose some kind of a settlement of these old matters. Would be glad if your clients would take lands for their claims.    *    *    *.    *    *    *    *    *
I will have the mortgage re-inscribed in time, at my costs, as there is time till May next. I prefer not re-inscribing till I can see what I can effect this winter."

It was fully shown by testimony, properly admitted (23 An., 455, succession of Kugler), that the debt referred to in this and previous letters, was the debt sued on. We think the letter quoted shows a clear recognition of the debt, and especially that part of it which refers to the mortgage securing the debt as still subsisting, and in which the writer offers to re-inscribe it at his own cost. The mortgage could have no existence, and its re-inscription would be a vain thing except on the hypothesis that the debt, of which the mortgage was but the accessory, still existed and was still owing by the debtor. This certainly constituted a plain and unmistakable acknowledgment of the debt, which interrupted prescription. 7 An. 201 ; 25 An. 512 ; 27 An. 70 ; 30 An. 1263.

In regard to the mortgage, the record shows that part of the lands mortgaged lay in the parish of Ouachita and part in other parishes, but the act of mortgage was never inscribed and re-inscribed except in the parish of Ouachita.

Art. 3369 C. C. declares : " The registry preserves the *evidence* of mortgages and privileges during ten years, reckoning from the day of its date ; its effect ceases, even against the *contracting parties,* if the inscriptions have not been renewed before the expiration of this time, in the manner in which they were first made."

The failure to inscribe did not divest the mortgagee of his rights as against the mortgagor ; but the mortgage, though thus in existence between the contracting parties, did not bind third persons. The mortgage between the parties to the act continued in force without inscription for ten years, the debt secured by it being kept alive ; but at the end of that time it prescribed ; no inscription having been made within that period of course no re-inscription could be made. The mortgagee, on the expiration of the delay without an inscription, cannot claim to be better situated than if he had inscribed. Had he inscribed and failed to re-inscribe within the ten years, the inscription would have perempted and ceased to produce any effect against the contracting parties. It is, therefore, clear that by not inscribing and subsequently re-inscribing

the mortgage within the ten years the mortgagee cannot, after the expiration of that term, claim any mortgage even as against the mortgagor or his estate.

It was held, in the case of Sorrells and Husband vs. Stamper, 27 An., 630, " that, after a mortgage has once perempted, it cannot be revived against a succession by the registry thereof after the lapse of ten years. No preference over ordinary creditors can be gained in that way." See, also, C. C. 2264, 3329, 3346, 3347 ; 14 An., 838 ; 21 An., 426 ; 27 An., 552.

If such is the consequence of a failure to *re-inscribe* a mortgage within ten years, as relates to the property of a succession, the same result must follow the omission, in this case, to *inscribe* the mortgage in the parish where the property is situated. The appointment of an administrator to a succession presupposes the existence of debts against the succession; and the administrator, while representing the deceased, represents also the creditors. The succession in this case is administered by an administrator who, in his representative capacity, is defendant in the suit, and we are bound to presume, therefore, that there are creditors whom he represents to be affected by this mortgage; but they, as third persons to this mortgage, can only be affected in so far as the act has been inscribed and re-inscribed in the place and manner and within the time prescribed by law. Under these circumstances the mortgage must be confined in its operation to the lands situated in the parish of Ouachita.

The petition sets forth, and the evidence shows, that the note sued on is one of a series of notes, eight in number, of like amount, date and tenor, secured by the same mortgage, and it is asked that the note in suit " be paid out of the proceeds of the mortgaged property according to its *pro rata* share, and in concurrence with the other mortgage notes."

The judgment of the lower court was in favor of the succession, sustaining the plea of prescription, and it must be reversed.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed ; and proceeding to render such judgment as the lower court should have rendered, it is ordered, adjudged and decreed that the plaintiff recover of the succession of Charles H. Morrison, deceased, the sum of five thousand dollars with eight per cent. interest per annum thereon from the 5th of February, 1868, till paid, together with five per cent. thereon for attorney's fees ; and that for said sum and interest a special mortgage be and the same is recognized, to take effect from the 15th of June, 1867, on the following described lands, situated in the parish of Ouachita, to wit :

The W. ½ of the E. ½ of Sec., and the W. ½ of Sec. 28, sections 29 and 30, and N. ½ of Sec. 31, and N. E. ¼ of Sec. 32, T. 17 north, range 4 east ; lots 1 and 2 and N. E. ¼ of N. E. ¼ Sec. 36, T. 17 N., R. 3 east, con-

taining in aggregate 2319$\frac{47}{100}$ acres, more or less, being known as the Charleston plantation, situated on the east bank of the Ouachita river, six miles below Monroe, mules, horses, stock and agricultural implements and all other appurtenances. Also, N. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ Sec. 19; S. W. $\frac{1}{4}$ of S. W. $\frac{1}{4}$ and N. E. $\frac{1}{4}$ of S. W. $\frac{1}{4}$ Sec. 18, T. 18 north, R. 1 east, containing 119$\frac{98}{100}$ acres, more or less. S. W. $\frac{1}{4}$ of S. W. $\frac{1}{4}$ Sec. 27 and lot 7 Sec. 22, T. 19 N., R. 4 east, containing 52$\frac{64}{100}$ acres. E. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ Sec. 31; S. E. $\frac{1}{4}$ of N. E. $\frac{1}{4}$ Sec. 18, T. 17 N., R. 2 east, containing 129$\frac{78}{100}$ acres, more or less. Also, certain lot of ground or square in town of Monroe, bounded in front by Walnut street, on the upper side by Washington street, on back by Second street, and on lower side by Jefferson street, being square No. 2 on the plat of town of Monroe, together with the buildings and improvements thereunto belonging, as set forth and described in the act of mortgage referred to, passed June 1, 1867.

And that said sum and interest, herein adjudged, be paid out of the proceeds of said property, according to its *pro rata* share, in concurrence with seven other notes of the same series, for $5000 each, dated June 1st, 1867, drawn payable to the order of Given, Watt & Co., and identified by the paraph of Andrew Hero, notary public, with an act of mortgage passed before the said notary, in the City of New Orleans, on the said 1st of June, 1867. In all other respects the claim of the plaintiff is rejected; the costs of both courts to be paid by the defendant and appellee.